United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEVIN BERTRAN ARBUCKLE,

Plaintiff,

v.

GREGORY J. AHERN, Sheriff; *et al.*,

Defendants.

___________________________________/

No. C-12-3076 EMC (pr)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This is a *pro se* prisoner's civil rights action under 42 U.S.C. § 1983 in which Plaintiff claims that Defendant was deliberately indifferent to serious medical needs when he failed to test Plaintiff's blood sugar and blood pressure levels on certain dates. Defendant has moved for summary judgment; Plaintiff has not opposed the motion and the deadline by which to do so passed months ago. For the reasons discussed below, the Court will grant Defendant's motion for summary judgment.

## II. BACKGROUND

Kevin Bertran Arbuckle alleged in his verified complaint that someone from the jail health services staff failed to test his blood sugar on one Saturday (i.e., April 21, 2012) during his stay in the jail (which by then had been about 18 months), although he normally had his blood sugar checked on Tuesdays and Saturdays. Due to pleading problems, Mr. Arbuckle was required to file an amended complaint and, later, a second amended complaint. The Court found that the unverified second amended complaint stated a claim only against Michael Harris for his alleged refusal to

check Mr. Arbuckle's blood pressure and blood sugar levels on scheduled days in April 2012, including specifically April 21, 2012. Mr. Arbuckle alleged in his unverified second amended complaint that, after his blood pressure and blood sugar levels were not checked on April 21, he felt weak and dizzy, passed out and had to be taken to the jail hospital. As will be discussed below, the jail hospital event occurred ten weeks after Mr. Harris allegedly failed to check Mr. Arbuckle's blood pressure and blood sugar levels; that hospital event has not been shown to be causally related to the failure to check those levels.

The following facts are undisputed unless otherwise noted:

The events and omissions giving rise to this action occurred at Santa Rita Jail in Alameda County from about April 1, 2012 through June 30, 2012 (sometimes referred to as "the relevant time period"). Mr. Arbuckle was an inmate at Santa Rita Jail. Mr. Harris was a licensed vocational nurse ("LVN") employed by Corizon Health, Inc., a company that provided health care services to inmates at Santa Rita Jail.

Mr. Arbuckle was a Type II non-insulin-dependent diabetic with high blood pressure. There were orders from a health care provider that Mr. Arbuckle was to receive Metformin each night for diabetes, and three medications for hypertension (i.e., amlodipine, hydrochlorothiazide and lisinopril). There also was an order from a health care provider that Mr. Arbuckle's blood sugar was to be tested twice a week (i.e., on Tuesday evening before dinner and Saturday morning before breakfast) to obtain fasting blood sugar levels to monitor his diabetes. Mr. Arbuckle's blood pressure was to be checked once a week, but not on any particular day, to monitor his hypertension.

During April 2012, Mr. Harris worked the day shift, which began at 7:00 a.m. and ended at 3:30 p.m. He was not on duty at the time when Mr. Arbuckle's blood sugar was scheduled to be checked because those checks typically would have occurred at 4:45 p.m. on Tuesdays and 4:45 a.m. on Saturdays.

*Blood sugar checks*: According to the medical records submitted with Mr. Arbuckle's second amended complaint, his blood sugar was checked as ordered on Tuesdays and Saturdays during the April 1 - June 30, 2012 time period, except on four days (i.e., April 17 and 21, and May 5 and 8). *See* Docket # 11-3 at 8-10. The parties disagree as to whether it was Mr. Harris who failed

to check the blood sugar on April 21, 2012. Mr. Arbuckle stated in his verified original complaint that he was informed by someone at Corizon Health that his blood sugar was not checked on April 21, 2012 because his "medical administration record was not flagged signifying that [Mr. Arbuckle was] a diabetic" and that Mr. "Harris stated that he did not see the order in [the] charts." Docket # 1 at 3.[1] There is no evidence that Mr. Harris was the person who failed to check Mr. Arbuckle's blood sugar levels on the three other days the testing was not performed as scheduled. The blood sugar values before and after the missed dates were within normal limits, and the medical records do not show that Mr. Arbuckle had any adverse events on or around the dates his blood sugar was not checked as required by the orders. *See id.*; *see also Docket # 11-2 through 11-6* (medical records attached to second amended complaint).

*Blood pressure checks*: The medical records show that Mr. Arbuckle's *blood pressure* was checked at least once a week during the same time period, except for the week of May 20, 2012. *See* Docket # 11-3 at 8-10; Docket # 11-5 at 14, 17 and 19 (noting blood pressure checks on April 3, 5, 10, 17 and 24, 2012; May 1, 7, 15, and 29, 2012; and June 6, 11, 22, and 26, 2012). There is no evidence as to why Mr. Arbuckle's blood pressure was not checked during the week of May 20. The "blood pressure values before and after the week when they were not checked were within normal limits" and the "medical records do not reflect Plaintiff had any problems associated with his blood pressure" during that week. Docket # 22-1 at 6.

On June 30, 2012, Mr. Arbuckle complained of feeling faint and dizzy and was brought to the jail infirmary or infirmary.[2] The medical records indicate that Mr. Arbuckle denied chest pain, nausea or vomiting; did not complain of shortness of breath and had clear respirations; was alert and oriented with a steady gait; had clammy skin; and had a soft and not tender stomach. Docket # 11-2

---

[1] By contrast, Mr. Harris stated that he did not know why Mr. Arbuckle's blood sugar was not checked on April 21, 2012, and that he did not work in Mr. Arbuckle's housing unit in April 2012. Docket # 22-1 at 4. For purposes of evaluating the summary judgment motion, the non-movant's version, is accepted. That is, the Court accepts as true that Mr. Harris stated that Mr. Arbuckle's blood sugar was not tested because Mr. Harris did not see the order to check it.

[2] It is not clear from the record whether the infirmary and the hospital were two facilities or two names for one facility. In either event, the infirmary and hospital were operated within the Santa Rita Jail.

at 64. His blood pressure was low and was recorded to be 65/45 and 60/40. He also had slightly elevated blood sugar at 187. ("The range of normal values is 70-130 before a meal and less than 180 one to two hours after the beginning of a meal." Docket # 22-1 at 7.) The records show that the doctor on call ordered that Mr. Arbuckle's blood pressure was to be monitored for a three-hour period (once every thirty minutes for two hours then once an hour) and that she be informed of the results. Mr. Arbuckle was encouraged to increase his intake of liquids. The records show that Mr. Arbuckle's blood pressure values were: 68/50 at 11:40 a.m.; 74/54 at 12:15 p.m.; 80/60 at 1:00 p.m.; 104/67 at 2:20 p.m.; and 116/77 at 3:45 p.m. *See* Docket # 22-4 at 66. The medical records further state that Mr. Arbuckle requested that he be allowed to return to his housing unit during the afternoon hours; that he was verbally responsive with clear speech; that he denied any dizziness, lightheadedness, pain or shortness of breath; and that he had normal vital signs. The notes further show that he was discharged from the jail hospital with instructions to inform the nurse on duty if he felt dizzy or had any other symptoms, and that he was encouraged to drink fluids and increase his food intake while adhering to his diabetic diet. There is no evidence that Mr. Harris was involved with the events of June 30, 2012. *See* Docket # 22-1 at 10.

After his release from the jail hospital, one of Mr. Arbuckle's blood pressure medications was reduced. Mr. Arbuckle's blood pressure was noted to be 130/86 on July 3, 2012; 129/87 on July 5, 2012; and 110/88 on July 6, 2012. He had a follow-up appointment with Dr. Pompey on July 6, 2012; Dr. Pompey determined that Mr. Arbuckle had experienced an orthostatic hypotension event, i.e., a decrease in blood pressure associated with a change in position, such as arising from a sitting or lying position to the standing position that most commonly produced dizziness. According to the record, Dr. Pompey's plan was to adjust a high blood pressure medication and have Mr. Arbuckle's blood pressure checked twice a week. *See* Docket # 22-1 at 9.

## III. <u>LEGAL STANDARD FOR SUMMARY JUDGMENT</u>

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (a fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.") The moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted.) The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, Mr. Arbuckle's original complaint (Docket # 1) was made under penalty of perjury, but his amended complaint (Docket # 7) and second amended complaint (Docket # 11) were not made under penalty of perjury. Only the original complaint is considered as evidence because only it was signed under penalty of perjury.

## IV. DISCUSSION

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). A defendant violates the Eighth Amendment only when two requirements are met: (1) the

deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Mr. Arbuckle's claims would arise under the Due Process Clause of the Fourteenth Amendment rather than under the Cruel and Unusual Punishment Clause of the Eighth Amendment if he was a pretrial detainee at the relevant time; however, the deliberate indifference standard still applies to his medical care claim. *See Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996) (standard of deliberate indifference applicable to pretrial detainees' medical claims).

A. <u>Serious Medical Needs?</u>

The Eighth Amendment claim requires that there be an objectively serious medical need. A "serious" medical need exists if the failure to treat an inmate's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* The evidence in the record showing that Mr. Arbuckle had Type II diabetes and hypertension suffices to permit a jury to find the existence of objectively serious medical needs. *Cf. Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003) (Type I diabetes is a serious medical need).

B. <u>Deliberate Indifference?</u>

A defendant is "deliberately indifferent" if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. The defendant must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If the defendant should have been aware of the risk, but was not, then he has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). "[T]o prevail on a claim involving choices between alternative courses of treatment, [an inmate] must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the inmate's] health.'" *Toguchi*, 391 F.3d at 1058 (citation omitted).

When, as here, the prisoner seeks damages against a defendant, the "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*,

844 F.2d 628, 633 (9th Cir. 1988). *Leer* explained that "it is important to distinguish the causal connection required when a plaintiff seeks injunctive or declaratory relief as opposed to damages." *Id.* In the former case, a broader and more generalized approach to causation is taken. *Id.*

> When plaintiffs, such as the inmates, seek to hold an individual defendant personally liable for damages, the causation inquiry between the deliberate indifference and the eighth amendment deprivation must be more refined. We must focus on whether the individual defendant was in a position to take steps to avert the [harm], but failed to do so intentionally or with deliberate indifference. In order to resolve this causation issue, we must take a very individualized approach which accounts for the duties, discretion, and means of each defendant. . . . Sweeping conclusory allegations will not suffice to prevent summary judgment. . . . The prisoner must set forth specific facts as to each individual defendant's deliberate indifference.

*Id.* at 633-34 (citations omitted). A defendant thus would not have exposure for every shortcoming in the medical department at the jail, but only if he personally was deliberately indifferent.

Mr. Harris has met his burden on summary judgment of showing the absence of evidence that he acted with the deliberate indifference necessary for an Eighth Amendment violation. Even viewing the evidence in the light most favorable to the non-movant, Mr. Arbuckle, no reasonable juror could conclude that Mr. Harris knew that Mr. Arbuckle faced a substantial risk of serious harm and disregarded it.

*Blood Sugar Checks*: Mr. Arbuckle's Eighth Amendment claim fails as a matter of law for two separate reasons. The first reason the claim fails is that there is absolutely no evidence that those four missed blood sugar checks resulted in any harm to him, regardless of who failed to perform those checks. The subjective prong of a deliberate indifference claim requires a showing of "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The evidence indicates that the blood sugar tests were done to monitor Mr. Arbuckle's diabetes in general and there is no evidence that his diabetes medication was adjusted on a daily basis in response to the blood sugar levels. Further, the evidence is undisputed that his blood sugar checks done on the days surrounding the missed days were within normal limits and he had no adverse event around the time of the four missed blood sugar checks. Mr. Arbuckle has failed to raise a triable issue of fact that he suffered any harm from the failure of persons on the medical staff to test his blood sugar levels on two days in April 2012 and two days in May 2012. *Cf. Hallett v. Morgan*, 296 F.3d 732, 746 (9th

Cir. 2002) (plaintiffs "could not prove an Eighth Amendment violation because they have not demonstrated that delays [in providing dental care] occurred to patients with problems so severe that delays would cause significant harm and that Defendants should have known this to be the case.") The evidence of Mr. Arbuckle's trip to the jail hospital on June 30, 2012 does not show or support an inference of harm from the failure to check his blood sugar levels more than seven weeks earlier because there is no evidence that the June 30, 2012 episode had anything to do with his blood sugar levels or failure to check them. The medical records show that the June 30, 2012 episode was a low blood pressure event, and there is no evidence that blood sugar testing has anything to do with a person's blood pressure.

The second reason the claim fails is that Mr. Arbuckle has offered no *evidence* that Mr. Harris deliberately did not test his blood sugar. Accepting Mr. Arbuckle's version of the facts as true, he has established at most that he was told by Mr. Harris and others that his blood sugar was not checked on April 21, 2012 due to a paperwork oversight. But that is at most negligence, and negligence is not deliberate indifference. *See Cano v. Taylor*, 739 F.3d 1214, 1217 (9th Cir. 2014) (disagreement about adequacy of mental health care treatment showed negligence, at most). Mr. Arbuckle has offered no evidence that Mr. Harris had any connection to the three other instances of missed blood sugar checks.

*Blood Pressure Check*: Mr. Arbuckle's Eighth Amendment claim regarding the failure to check his blood pressure fails as a matter of law for similar reasons. First, there is absolutely no evidence that the one missed blood pressure check resulted in any harm to him, regardless of who failed to check it. *See Jett*, 439 F.3d at 1096 (subjective prong of a deliberate indifference claim requires "harm caused by the indifference"). Mr. Arbuckle has not provided any evidence that would allow a jury to infer that the low blood pressure event on June 30, 2012 was caused by the missed blood pressure check during the week of May 20, 2012. Second, there is absolutely no evidence that Mr. Harris was the person who caused Mr. Arbuckle's blood pressure not to be checked during the week of May 20, 2012.

When the evidence is viewed in the light most favorable to Mr. Arbuckle, and inferences therefrom drawn in his favor, no reasonable jury could return a verdict for him and against Mr.

United States District Court
For the Northern District of California

Harris. Mr. Harris therefore is entitled to judgment as a matter of law on the Eighth Amendment claim.

## V. CONCLUSION

For the foregoing reasons, Defendant's unopposed motion for summary judgment is **GRANTED**. (Docket # 22.) The other Defendants were dismissed in an earlier order, and the remaining Defendant has been found entitled to summary judgment. Therefore judgment will be entered in all Defendants' favor and against Plaintiff.

IT IS SO ORDERED.

Dated: May 16, 2014

EDWARD M. CHEN
United States District Judge